```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

|                                       |                            |
|---------------------------------------|----------------------------|
| BRENDA SHULER,                        |                            |
|     Plaintiff,                        |                            |
| V.                                    | CASE NO. 3:05CV480 (RNC)   |
| REGENCY HOUSE OF WALLINGFORD, INC.,   |                            |
|     Defendant.                        |                            |

RULING AND ORDER

Plaintiff brings this action against her current employer alleging that she has been subjected to discrimination in the workplace based on race and disability in violation of federal and state law.  Other claims are also pleaded.  Defendant has moved to dismiss counts nine, ten, and eleven of the amended complaint, which allege negligent supervision, promissory estoppel, and intentional infliction of emotional distress.  For the reasons that follow, the motion is granted in part and denied in part.

I.   Facts

The amended complaint alleges the following facts. Plaintiff is an African-American female.  In 1999, she was hired by the defendant to work as a nurse.  (Am. Compl. ¶ 13.)  In September 2003, a co-worker began making derogatory comments about the plaintiff's race and work performance.  (Am. Compl. ¶¶ 19-28.)  Plaintiff and her supervisor brought the co-worker's conduct to the attention of the Director of Nursing, Shelly

1

Jackson, and her supervisor, Lou Abramson. (Am. Compl. ¶¶ 30-35.) In retaliation for these complaints, Jackson assigned the plaintiff to an area of the facility that was unfamiliar to her, arranged for her to be closely monitored while dispensing medication to patients, and gave her a negative performance evaluation, which stated that she scared patients because she was "a large, Black woman." (Am. Compl. ¶¶ 36-48.) Despite assurances that the harassment and retaliation would be taken care of, Jackson's retaliation continued. (Am. Compl. ¶¶ 54-56.)

In November 2003, plaintiff suffered a severe knee injury at work, which prevented her from performing her usual duties. (Am. Compl. ¶¶ 61-62.) Defendant's director of environmental services offered to provide the plaintiff with light duty work. (Am. Compl. ¶ 67.) However, Jackson refused to give her any light duty assignments. (Am. Compl. ¶¶ 68-70.) In April 2004, plaintiff underwent knee surgery. (Am. Compl. ¶ 72.) She was cleared for light duty in June, but the defendant would not permit her to return to work until she was free of all restrictions. (Am. Compl. ¶¶ 74-75.) After more surgery in October 2004, she was cleared for light duty in February 2005, (Am. Compl. ¶¶ 79-81), but defendant still refused to give her light duty assignments. (Am. Compl. ¶ 84.) In addition, defendant failed and refused to pay some medical bills associated with plaintiff's knee injury. (Am. Compl. ¶¶ 251-56.)

Plaintiff filed this action in March 2005. After defendant filed a motion to dismiss counts nine, ten, and eleven, plaintiff

amended the complaint in July.  Defendant then filed a motion to dismiss the same counts of the amended complaint.  Both motions to dismiss are pending.[1]

II.  Discussion

A complaint may be dismissed for failure to state a claim on which relief may be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In applying this test, which is designed to protect the right of access to courts, the allegations of the complaint must be accepted as true and interpreted in a manner most favorable to the plaintiff.  Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 202 (2d Cir. 1999).

Negligent Supervision

Plaintiff's negligent supervision claim is based on Jackson's alleged failure to prevent the co-worker's harassment, and Abramson's alleged failure to prevent Jackson's retaliation.  Initially, the defendant moved to dismiss this claim on the ground that the plaintiff had failed to allege that the harassment and retaliation were foreseeable.  In response to that argument, plaintiff amended the complaint to allege the element of foreseeability.  Since then, the defendant has filed a

---

[1] Plaintiff mistakenly contends that the second motion to dismiss should be summarily denied because defendant failed to timely file an accompanying memorandum of law.  The second motion to dismiss incorporates by reference the memorandum filed in support of the fist motion, as permitted by Fed. R. Civ. P. 10(c), which is sufficient.  See, e.g., Lowden v. William M. Mercer, Inc., 903 F. Supp. 212, 216 (D. Mass. 1995).

supplemental memorandum arguing that a claim for negligent supervision cannot be predicated on a supervisor's failure to prevent a violation of federal and state antidiscrimination statutes.[2]  Plaintiff argues that this new ground for dismissal should not be considered at this stage because it was not raised earlier.  In the circumstances presented here, I agree.

By raising a new ground for dismissal, defendant's supplemental submission has the same effect, in terms of its impact on the posture of the litigation, as a reply brief that raises a new argument.[3]  Submitting such a reply brief is prohibited by Local Rule 7(d), which requires that any reply brief "be strictly confined to a discussion of matters raised by the responsive brief."  Moreover, the new ground for dismissal presented in the defendant's supplemental submission raises unsettled issues of state law that are quite complicated.  Any prediction as to how the Connecticut Supreme Court would rule on these issues should be made only on an adequately developed record, including adequate briefing by both sides.  Since we do not have such a record at this time, the motion to dismiss this claim is denied.

---

[2]  Defendant relies on the recent decisions in Canty v. Rudy's Limousine, No. 3:04CV1678 (CFD), 2005 WL 2297410, at *5-6 (D. Conn. Sept. 15, 2005) and Deguzman v. Kramer, No. 3:04CV2064 (JCH), 2005 WL 2030447, at *2 (D. Conn. Aug. 23, 2005).

[3]  The defendant's submission is therefore materially different from one that simply provides the court with an updated citation or a citation to a new case.

<u>Promissory Estoppel</u>

Under the law of promissory estoppel, courts will enforce a promise that reasonably induces action or forbearance, when doing so is necessary to avoid injustice.  <u>D'Ulisse-Cupo v. Bd. of Dirs. of Notre Dame High Sch.</u>, 202 Conn. 206, 213 (1987) (quoting Restatement (Second) of Contracts § 90 (1973)).  "A fundamental element of promissory estoppel . . . is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance."  <u>Id.</u>  For a statement to induce reasonable reliance, it must manifest "a present intent to commit as distinguished from a mere statement of intent to contract in the future."  <u>Stewart v. Cendant Mobility Servs. Corp.</u>, 267 Conn. 96, 105 (2003).  However, it need not be the equivalent of a contractual offer.  <u>Id.</u>  Whether a representation constitutes an enforceable promise is generally a question of fact.  <u>Id.</u> at 106.

Plaintiff's promissory estoppel claim is based primarily on alleged representations by the defendant that discrimination would not be tolerated, complaints of discrimination would be promptly investigated, and appropriate disciplinary action would be taken.  (Am. Compl. ¶¶ 229, 236.)  She points to statements in defendant's employee handbook concerning the company's commitment to equal employment opportunity.[4]  In addition, she

---

[4] The statements include the following: "It is the policy of Regency House of Wallingford, Inc. to provide equal employment opportunity to all qualified persons . . . ."; "It is the intent and desire of Regency House of Wallingford, Inc. that equal employment opportunity be provided in employment . . . ."; "Violations of this policy will not be permitted . . . ."

alleges that when she complained about discrimination, she was assured by supervisory personnel that her complaints would be promptly investigated and appropriate action taken within a reasonable time. (Am. Compl. ¶ 229(m) and (o)). Defendant contends that these statements are insufficiently clear or definite to induce reasonable reliance.

Statements of policy concerning an employer's commitment to equal opportunity or adherence to antidiscrimination laws may well be too general to support a claim of promissory estoppel. See, e.g., Peralta v. Cendant Corp., 123 F. Supp. 2d 65, 86 (D. Conn. 2000). In Peralta, a claim of promissory estoppel based on an employer's antidiscrimination policy was rejected because the policy was merely a "statement[] of intention or an articulation of company goals and objectives." Id. In this case, however, some of the alleged promises were made directly to the plaintiff in response to her complaints of discrimination. Construing the plaintiff's allegations in a manner most favorable to her, she may be able to prove that these representations reasonably induced her to continue reporting discrimination, and that she did so to her detriment. Accordingly, the motion to dismiss this claim is denied.[5]

---

[5] Plaintiff's claim has two other aspects: she alleges that the defendant promised to give her light work (Am. Compl. ¶ 242(a) and (c)), and, in addition, promised to pay her medical bills and defend her against claims by creditors (Am. Compl. ¶ 252). Defendant contends that these aspects of the claim must be dismissed because the alleged promises on which plaintiff relies are too indefinite. It may be that the plaintiff will be unable to prove that she reasonably relied to her detriment on either of these alleged promises. At this stage, however, the test is

Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, a plaintiff must allege four elements: (1) the defendant intended to inflict emotional distress or knew or should have known emotional distress was a likely result of his conduct; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct was the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was severe.  Petyan v. Ellis, 200 Conn. 243, 253 (1986).  Conduct is extreme and outrageous in this sense if it "exceed[s] *all bounds* usually tolerated by decent society."  Id. at 254 n.5 (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 12, at 60 (5th ed. 1984)).  In other words, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Appleton v. Bd. of Educ., 254 Conn. 205, 211 (2000) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

Plaintiff alleges four categories of offensive conduct: defendant's failure to prevent racial discrimination and harassment by her co-worker; Jackson's retaliation when plaintiff complained about the co-worker's conduct; defendant's failure to provide reasonable accommodations to plaintiff on account of her

---

whether she can prove any set of facts consistent with her allegations that would entitle her to relief.  Applying this test, her allegations concerning these other promises are sufficient.

injured knee; and defendant's failure to pay her medical bills. (Am. Compl. ¶¶ 263-67.)  Plaintiff's most troubling allegations concern the retaliation she claims to have experienced after she complained to management about her co-worker.  She alleges that, as a result of her complaints, she was assigned to a part of the facility where she had not worked before and did not want to go (partly because she was afraid of making a mistake there, which could provide Jackson with an excuse to fire her), subjected to unnecessary monitoring, and given a negative performance evaluation that included a comment relating to her race. Defendant contends that such conduct cannot be considered extreme and outrageous.

     After due consideration, I conclude that plaintiff's allegations, viewed most favorably to her, are insufficient to withstand the motion to dismiss.  Though the racist conduct attributed to plaintiff's co-worker is deplorable, defendant's failure to prevent such conduct from occurring in the workplace does not itself constitute extreme and outrageous conduct for purposes of this tort.  See Miller v. Edward Jones & Co., 355 F. Supp. 2d 629, 646-47 (D. Conn. 2005).  Moreover, reassigning, monitoring and evaluating employees are routine employment actions, which do not expose employers to liability for intentional infliction of emotional distress, even if motivated by an improper purpose.  See Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 195 (D. Conn. 2000).  This is not to suggest that the law is indifferent to an employer's retaliation.  If proven,

8

the retaliatory conduct alleged here will provide a basis for recovery of damages under the antidiscrimination laws.  Viewed in light of existing case law, however, it cannot be condemned as conduct on the part of the employer that is so outrageous in nature and extreme in degree as to provide a basis for liability for intentional infliction of emotional distress.  Accordingly, the motion to dismiss this claim is granted.

III. Conclusion

For the foregoing reasons, defendant's motion to dismiss [Doc. #20] is hereby granted in part and denied in part, and count eleven is dismissed.  The motion to dismiss the original complaint [Doc. #6] is denied as moot.

So ordered.

Dated at Hartford, Connecticut this 12th day of January, 2006.

_____/s/_____
Robert N. Chatigny
United States District Judge